# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Use of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A CELL-SITE SIMULATOR TO IDENTIFY TWO CELLULAR DEVICES | )<br>)<br>) Case No. 3:21MJ209<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the __Southern__ District of __Ohio__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 841(a)(1) | possession with intent to distribute/distribution controlled substances |
| 21 USC s. 843(b) | use of a communication facility to facilitate a felony drug crime |
| 21 USC s. 846 | conspiracy |

The application is based on these facts:
See Attached affidavit of Austin Roseberry

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I, Brent Tabacchi, certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the DEA. See 18 U.S.C. §§ 3122(b), 3123(b).

*Austin Roseberry*
Applicant's signature

Austin Roseberry, SA of the DEA
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__reliable electronic means__ *(specify reliable electronic means)*.

Date: __5/26/21__

City and state: __Dayton, Ohio__     Sharon L. Ovington, US Magistrate Judge
Printed name and title

**AFFIDAVIT IN SUPPORT OF**
**<u>AN APPLICATION FOR A SEARCH WARRANT</u>**

I, Austin M. Roseberry, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular devices assigned the call numbers below ("Target Cellular Devices"), and which are described in Attachment A:

    a. 513-293-0872 ("Target Telephone 1" or "TT1"), a cellular device serviced by T-Mobile with IMSI 310260043488790 and subscribed to in the name of Jamal Mitchell, 2036 Quail Ct., Apt. 17, Cincinnati, Ohio, which is more fully described in Attachment A1.

    b. (513) 479-7955 ("Target Telephone 2" or "TT2"), a cellular device serviced by T-Mobile with IMSI 310240135298471 and subscribed to in the name of Mike Lowery, 66 Ludlow Street, Hamilton, Ohio 45011, which is more fully described in Attachment A2.

(collectively, the "Target Cellular Devices").

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-

3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent of the Drug Enforcement Administration (DEA), assigned to the Dayton Resident Office. As such, I am an "investigative or a law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 801, et. sec., and Title 18, United States Code, Section 2516.

4. I have participated in numerous narcotics investigations during the course of which I have conducted physical and wire surveillance, executed search warrants, and reviewed and analyzed recorded conversations and records of drug traffickers. Through my training, education, and experience (including debriefing cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, and conducting surveillance on numerous occasions of individuals engaged in drug trafficking), I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, the various ways drug money is laundered, and the efforts of persons involved in such activities to avoid detection by law enforcement.

5. I have participated in the investigation and prosecution of complex narcotics enterprises, including major narcotics organizations. These investigations included the use of court-ordered eavesdropping. I have also conducted extensive analyses of telephone billing records for telephones used by narcotics traffickers. Members of the Dayton Resident Office also have extensive experience in narcotics investigations, especially involving high-level

narcotics traffickers and money launderers. I have had and continue to have conversations with them concerning this and other narcotics related investigations. I have worked on surveillance and enforcement teams working in conjunction with court authorized T-III intercepts. I have worked as a monitor, listening to T-III intercepts, determining minimization of intercepts, and directing surveillance and enforcement teams to take action based on T-III intercepts that I monitored.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the Target Cellular Devices are currently believed to be located inside this District as each device has a 513 area code, which is associated with southern Ohio. Additionally, subscriber records for the Target Cellular Devices place them in southern Ohio. Pursuant to Rule 41(b)(2), law enforcement may use the technique described in Attachment B outside the District provided the device is within the District when the warrant is issued.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute controlled substances/distribution of controlled substances), 843(b) (use of a communication facility to facilitate a felony drug offense) and 846 (conspiracy to possess with intent to distribute and to distribute controlled substances) have been committed, are being committed, and will be

committed by Clemente Quezada and the users of the Target Cellular Devices. There is also probable cause to believe that the identity of the Target Cellular Devices will constitute evidence of those criminal violations. In addition, in order to obtain additional evidence relating to the Target Cellular Devices, their users, and the criminal violations under investigation, law enforcement must first identify the Target Cellular Devices. There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning that identifying information.

## PROBABLE CAUSE

9. The DEA is currently investigating a Dayton, Ohio based fentanyl and methamphetamine drug trafficking organization (DTO). During this investigation, DEA has identified Clemente Quezada as an individual who coordinates the shipment and distribution of kilogram quantities of illegal drugs within the Dayton, Ohio region.

10. During late March 2021 and again during early May 2021, DEA sought and received orders from the Honorable Thomas M. Rose, District Court Judge of the United States District Court for the Southern District of Ohio, authorizing interception of wire communications over telephone number 937-219-9324, a cellular telephone used by Clemente Quezada. Prior to the court-authorized interceptions, DEA employed surveillance and consensually monitored calls to learn that Quezada used this number to coordinate the delivery of fentanyl to a purported customer during February 2021. DEA has executed Judge Rose's orders, and during March, April and May 2021, it has intercepted wire communications between Quezada at 937-219-9324 and various individuals involving drug transactions as detailed below.

A. **Quezada and Target Telephone 1 Engage in Drug-Related Conversations During March and April 2021**

11. During late March 2021, DEA lawfully intercepted a call between Quezada and the user of Target Telephone 1 (namely, 513-293-0872) in which Quezada negotiated the sale of a half-kilogram of illegal controlled substances to the user of Target Telephone 1. On or about March 31, 2021, DEA conducted surveillance of Quezada and tracked him as he travelled from his home at 1035 Harvard Avenue, in Fairborn, Ohio to 2603 Knorr Avenue, Cincinnati, Ohio. Notably, as Quezada travelled to this location, he and the user of Target Telephone 1 engaged in phone conversations in which they confirmed their plan to meet and complete the drug transaction.

12. Upon arriving at 2603 Knorr, Quezada parked in front of the residence. Around that time, Quezada placed an outgoing call to Target Telephone 1 and engaged in the following lawfully-intercepted conversation with its user (identified as TT1):

TT1: Two minutes, bro. I'm pullin' up.

QUEZADA: Hello?

TT1: Yeah, MeMe [PHONETIC] I'm pullin' up in two minutes right here, I'm right here.

QUEZADA: A'ight.

TT1: A'ight, a'ight.

Shortly thereafter, a blue Infiniti sedan registered to Sheila Leonard arrived at the residence. Around that time, Quezada received an incoming call from Target Telephone 1 and engaged in the following lawfully-intercepted conversation with its user (identified as TT1):

QUEZADA: I see you.

TT1: A'ight.

QUEZADA: A'ight.

Around this time, Quezada and the driver of the Blue Infiniti exited their respective vehicles and entered the residence at 2603 Knorr. While Quezada remained inside, DEA watched as numerous other vehicles arrived at this location, their occupants entered the home for short periods of time, and then departed. Based on my training and experience, this pattern of activity – namely, heavy, short-term traffic at a location – is consistent with residence being used as stash house or distribution point for narcotics. Quezada eventually left 2603 Knorr, returned to his car, and drove to the Dayton area. Based on these events, I believe that Quezada delivered controlled substances to the user of Target Telephone 1, who was also the driver of the blue Infiniti.

13. On or about April 22, 2021, Quezada received an incoming call from Target Telephone 1 and engaged in the following lawfully-intercepted conversation with its user (identified as TT1):

QUEZADA: Hello.

TT1: What's up. MeMe [Phonetic]?

QUEZADA: What's goin' on witchu', man?

TT1: Nothin'. What's goin' on?

QUEZADA: I tryin' to see how you lookin' over there, man.

TT1: I just talked to 'im last night or was it last night when you talk to 'im?

QUEZADA: Uh, I didn't talk to him last night, he text me like around twelve, thirty.

TT1: He say he was gonna um, holler at you. I guess he's gonna come down and give me some, I guess uh, some little stronger or whatever. 'Cause I told 'im like it was, it was goin', but then slowed up. So, I mean, I still got a nice amount.

[Voices Overlap]

QUEZADA: That's fo' sho'. That's what the reality do [Unintelligible]. I dunno. It's whatever.

TT1: I mean, I dunno what he did, just that's what he told me. We talked prolly 'bout thirty, forty-five minutes. We just talkin' and shit.

QUEZADA: [Coughs] Okay [Sneezes], he'll prolly call me later.

TT1: Okay, uh... Just let me know.

QUEZADA: A'ight.

TT1: A'ight.

Based on my training and experience as well as knowledge of the facts of this case, I know that, in the call detailed above, Quezada and the user of Target Telephone 1 confirmed the prior delivery of controlled substances to the user of Target Telephone 1 during late March 2021. Specifically, the user of Target Telephone 1 indicated that the drugs received from Quezada were moving slowly and that he still had a quantity of controlled substances for sale. DEA has reviewed toll records for Target Telephone 1, and it remains active as of May 2021.

### B. Quezada and Target Telephone 2 Engage in Drug-Related Conversations During March 2021

14. On March 29, 2021, Quezada received an incoming call from Target Telephone 2 (namely, (513) 479-7955) and engaged in the following lawfully-intercepted conversation with its user (identified as TT2):

TT2: Hello.

QUEZADA: What's up bruh?

TT2: What's good with it?

QUEZADA: No much, what's going on witchu? How you looking?

TT2: Uh, yeah, I can get the rest of it [unintelligible]. Let me call you back in five minutes. I'mma 'bouta scratch it up the rest of it now. I'mma call you right back.

QUEZADA: Uh, uh-huh. Um, it don't have to be prolly for, in the [unintelligible] tomorrow you gonna have to come this way home, and we're gone figure it out. Or try that today.

[Voices Overlap]

QUEZADA: I'll try that today. I said, Imma try that today. I ain't be able to meet up with you today tho'.

TT2: Okay, than. A'ight, A'ight. Well, just I guess whenever you ready, just hit me.

QUEZADA: Hopefully tomorrow.

TT2: Okay then.

QUEZADA: So, you don't want me to bring you the same thing, I'm bringing you half?

TT2: You say what?

QUEZADA: Whatchu wanna do? Bring about half?

TT2: Uhh . . . I prolyl, uh, I prolly wait like another week or so, so I can just give you straight ca-, you know what I mean? Give you the money for it.

QUEZADA: A'ight

TT2: Just in case is, just in case is slow, you know what I'm sayin? So, you won't be waitin' around.

QUEZADA: A'ight

TT2: A'ight. Yes, just hit me then, whenever you're ready there.

QUEZADA: Hey bro um . . . I'm over on Northgate.

[Voices Overlap]

TT2: Yeah?

QUEZADA: I'm over on the Northgate, if you wanna meet me over ther?

TT2: You say Northgate?

QUEZADA: Yeah.

TT2: Right now?

QUEZADA: Not right now, I'm still on my way. Like prolly I'll be out there like in an hour.

TT2: Okay, um . . . What you said you are going to be at tomorrow morning?

QUEZADA: Uh, nah. I could have, I could have met you halfway somewhere.

TT2: Oh, okay then, A'ight. Well, I'mma . . . Okay then, just call me then.

QUEZADA: Alright. Or we just meet tomorrow halfway, so that's cool.

TT2: Okay then, a'ight.

QUEZADA: A'ight.

Based on my training and experience, and my familiarity with the facts of this case, the user of Target Telephone 2 initially indicated that he was attempting to gather cash to pay for a half kilogram of controlled substance. Quezada essentially indicated that he was willing to meet the

user of Target Telephone 2 the following day with the controlled substances and wait for payment at a later time.

15. On or about March 30, 2021, DEA followed Quezada as he travelled to the outlet malls in Monroe, Ohio. Around the time of this surveillance, Quezada engaged in calls with the user of Target Telephone 2 concerning a drug transaction. Quezada ultimately met with a person believed to be Erick Collins and completed what investigators believed to be a drug transaction. DEA followed Collins back to his residence of 1566 Pleasant Run Dr. Apt 10, Cincinnati, Ohio. Toll records confirm that Target Telephone 2 remains active as of May 2021.

## MANNER OF EXECUTION

1. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

2. To facilitate execution of this warrant, law enforcement may use an investigative device that sends signals to nearby cellular devices, including the Target Cellular Devices, and in reply, the nearby cellular devices will broadcast signals that include their unique identifiers. The investigative device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell to communicate with others. Law enforcement will use this investigative device when they have reason to believe that the users of the Target Cellular Devices are present. Law enforcement will collect the identifiers emitted by

cellular devices in the immediate vicinity of the Target Cellular Devices when the subject is in multiple locations and/or multiple times at a common location and use this information to identify the Target Cellular Devices, as only the Target Cellular Devices' unique identifiers will be present in all or nearly all locations. Once investigators ascertain the identity of the Target Cellular Devices, they will cease using the investigative technique. Because there is probable cause to determine the identity of the Target Cellular Devices, there is probable cause to use the investigative technique described by the warrant to determine the identity of the Target Cellular Devices.

3. The investigative device may interrupt cellular service of cellular devices within its immediate vicinity. Any service disruption will be brief and temporary, and all operations will attempt to limit the interference cellular devices. Once law enforcement has identified the Target Cellular Devices, it will delete all information concerning non-targeted cellular devices. Absent further order of the court, law enforcement will make no investigative use of information concerning non-targeted cellular devices other than distinguishing the Target Cellular Device from all other devices.

## AUTHORIZATION REQUEST

4. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

5. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until

30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the person carrying the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

6. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to identify the Target Cellular Device outside of daytime hours.

7. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

8. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

*Austin Roseberry*

Austin M. Roseberry
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
On: 5/26/21

Sharon L. Ovington
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location and owner of the following cellular devices:

1. 513-293-0872 ("Target Telephone 1" or "TT1"), a cellular device serviced by T-Mobile with IMSI 310260043488790 and subscribed to in the name of Jamal Mitchell, 2036 Quail Ct., Apt. 17.  T-Mobile is a company headquartered 4 Sylvan Way, Parisippany, New Jersey.

2. (513) 479-7955 ("Target Telephone 2" or "TT2"), a cellular device serviced by T-Mobile with IMSI 310240135298471 and subscribed to in the name of Mike Lowery, 66 Ludlow Street, Hamilton, Ohio 45011.  T-Mobile is a company headquartered 4 Sylvan Way, Parisippany, New Jersey.

## ATTACHMENT B

### Particular Things to be Seized

Pursuant to an investigation of Clemente Quezada, and any associates, both known and unknown, for a violation of Title 21 U.S.C. §§ 841, 843(b) 846, this Warrant authorizes the officers to whom it is directed to determine the location of the cellular devices identified in Attachment A by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night.  This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property.  The Court finds reasonable necessity for the use of the technique authorized above.  See 18 U.S.C. § 3103a(b)(2).